Thank you, your honor. May it please the court, I'm Richard Krauthammer. I'm from Raleigh, North Carolina. I represent defendant-appellant David Orozco. I would like to reserve five minutes for rebuttal. Yes, sir. This is a search warrant case from the Eastern District of North Carolina. More specifically, the issue is whether or not the search warrant that issued in this case had or lacked probable cause to search the electronic media that was found on Mr. Orozco's person when he was arrested for having no operator's license. The facts are fairly simple. An officer was sitting in his patrol car in a small town in North Carolina, checking license plates as they drove by. He noticed Mr. Orozco's plate, and he looked on his computer and found that the registered owner of that vehicle did not have a driver's license, so he pulled out and followed him. He observed some traffic violations, so he put on his blue lights and stopped him. He discovered that Mr. Orozco was not the registered owner of the car, but had borrowed it or rented it, I can't remember which, but Mr. Orozco did not have a driver's license. Most importantly, he noted that Mr. Orozco was nervous, in his opinion. There appeared to be scratch marks on the dash of the car, which indicated to the officer in his training experience that something might have been hidden behind that dash. He called for the drug detection dog to come to the scene. Another officer arrived to help him. That officer purportedly questioned Mr. Orozco, who gave permission to search the car. The drug detection dog alerted on the car, and the officers then pryed open that dash, and they found $111,000-plus hidden behind the dash. They subsequently had the drug detection dog walk past that cash as compared to other cash they had on hand, and the drug detection dog alerted on the cash they found in Mr. Orozco's car. So they suspected that Mr. Orozco may be involved in the drug trafficking business, so they sought a search warrant to search his car. Just so that I'm clear, at this point, because I think you're now getting ready to get to the part that you disagree with, at this point, they had probable cause to do that search and to locate the cash. Your question is, what do they have past that, right? Correct. Okay. So they seek a search warrant, and that search warrant is located in the Joint Appendix starting on page 39 through page 43. And they asked to search the car, because it had the cash in it, a Samsung cell phone that Mr. Orozco had in his possession. Is that the same phone that had the GPS data on it that he closed down as soon as they got there? Yes, Your Honor. There was a flip phone and a Samsung smart phone. It was a Samsung smart phone that he was using while he was driving, navigating with a GPS app, and closed down when the officer stopped him. And then a flip phone and then some micro SD or secure digital cards that they didn't know about until they got him down to the police station. So they get him down to the police station, they're searching him, and a $100 bill that's folded up falls out of his clothing. Are you talking about after the warrant was issued now? No, they haven't gotten to him. They're still before the warrant. Yeah, they're still before the warrant. So when they're searching him down at the police station, this $100 bill drops out. It's folded up. Inside of it are these micro SD cards. And Mr. Orozco immediately – they unfold the $100 bill. The SD cards fall to the floor. Mr. Orozco immediately picks up a couple of them and puts them in his mouth and starts chewing. They stop him. They get those out of his mouth. One of them is destroyed. I think the other one's partially destroyed. But they gather up all the evidence, and then they go seek a search warrant where they ask to search the car, the cell phone, and these micro SD cards. Well, Counselor, are you drawing a distinction then between the basis for searching the cell phone and the basis for searching the memory cards, the SD cards? Yes, Your Honor. You're not taking any issue that once somebody puts those items in his mouth that that's a highly suspicious circumstance given the fact that there was $111,000 found on him that the police had a reason to believe that something was going on? I agree that's suspicious behavior, Your Honor. Okay. So it's only the cell phone that you're complaining about here? Well, no, I'm complaining about both, but for different reasons. So they get this warrant, and in the warrant they – You're saying there wasn't probable cause for either one. Correct. That's my argument. The warrant is not supported by probable cause. Right.  Well – There's a lack of probable cause is what you're saying. In general, yes. The ultimate argument is that the warrant lacks probable cause for both the phone and the SD cards. But these officers were doing things just the way they're supposed to do it. I mean, they got the information, and then they kind of – they got a warrant. We criticize them for doing warrantless searches all the time. Right. And we'd like for them to go see a judicial officer and try to get a warrant. That's what they did here. Correct. Now you're still complaining. But they can't hand-wave the warrant requirement. They can't just kind of shuffle their way through it. They've still got to meet certain requirements to get that warrant. The warrant has to be supported by probable cause. Correct. And so I'm arguing that it is not supported by probable cause as to that cell phone and those micro SD cards. And with respect to the SD card – After you've tried to eat one of the cards for more than one. Well, the problem is with respect to the warrant, search warrants have to answer two W questions. The first is what. What do you want to search? The second is why. Not why do you want to search it. The magistrate knows they want to look for evidence of crimes. But why do you think that particular thing or place has evidence of a crime? With respect to the micro SD cards, the search warrant application satisfies the first question. What? I want to search the micro SD cards. But it never satisfies the second question, the why. Why do you think it contains evidence of a crime? And like I said, that's on pages 39 to 43 of the joint appendix. But never in this application does the officer write the magic incantation, in my training and experience, drug dealers keep evidence of their crimes on their micro SD cards or on their electronic media in general. To what extent, though, counsel, can we consider the fact that this warrant was obtained after the defendant was found driving somebody else's car? He said he was only driving the car because he was paid to do so. Isn't that correct? Correct. And $111,000 was found hidden in the car. Right. And the drug dog had detected or had alerted on the car itself. So don't we have to consider all of those facts? And so you're just saying that it's a leap to include the phone. To what extent does common sense and common experience play in? You're saying that there have to be essentially magic words in the warrant. Well, the government argues about this term of reasonable inference. The magistrate is allowed to draw reasonable inferences based on what they do tell him. And you have the Williams case out there which talks about a house and basically says it's reasonable to infer that if somebody is believed to be involved in the drug trade, they're probably storing evidence of their drug crimes back at their house. So a warrant can issue to go search their house. And so the question is, well, should that extend to something like a cell phone? Is it reasonable to infer that perhaps they're storing evidence of their crimes on a cell phone? Help me understand this. I mean, I understand this idea about a reasonable inference, right? But they pull up to the guy. He has the Galaxy open. It has a GPS indicating he's going somewhere, right? And then he tells them, I got paid to deliver this car. Well, the GPS, which is on the phone, and the evidence of the GPS, where he was going, is on the phone. He's told them he's driving a car that's not his with $111,000 cash because he was paid to do so. Why isn't that like the most direct evidence of drug trafficking? Because it's not illegal to drive a car filled with cash, even if it's hidden. Yeah, but there's probable cause to believe that that was drug money. I mean, that's where we started, right? Because we said, we asked you, I asked you at the beginning, you agree there was probable cause to search for the cash. And then when they find the cash, maybe it's not proof beyond a reasonable doubt, but there's probable cause to believe at that point that that's drug money. Well, I don't necessarily agree with that. Okay, posit for a minute hypothetically that there's probable cause to believe the $111,000 in cash is drug money. And posit, except this is a hypothetical, that your client said he got paid to drive that in a car that wasn't his. And posit that the officer saw when he walked up, there was a GPS, you know, open on the phone that he immediately closed. So if those facts are, except those facts, like, why is it that probable cause that the location where he's going, which was on the GPS, is evidence of his involvement in drug trafficking? Because he doesn't write it in the warrant and say, in my training experience, drug traffickers will keep evidence of their crimes on their phones. And that's not, I would argue, that's not necessarily a given. He doesn't have to write that, because what he said was, what, there's a warrant, like, it had the GPS data. It showed that he was there, right? But it doesn't link it in the warrant. He doesn't say, and I'm not so sure. Maybe that's my rub. Does he include the GPS data? Maybe I'm overstating the story here. The affidavit is insufficient. Is that what you're arguing? Correct. You talk about the warrant, but you're really talking about the affidavit. The affidavit or the application for the warrant. To support the warrant. Correct. You're saying this stuff wasn't sufficiently written down? Correct. And so the judge didn't know enough. Right. He doesn't have enough facts before him to know. Even though they knew enough, as Judge Richardson laid it out there. You're saying they didn't write enough of it down to properly convince a reasonable judge. Right. Because if we just allow them to write conclusory language in an application and have the magistrate just rubber stamp that, then we're not really going through the warrant process. We're not asking a disinterested neutral observer to look at the facts and decide if a warrant should issue. And that's what's in this affidavit, is conclusory language. In my training experience, all of these facts amount to, and he writes, probable cause to search a Samsung phone located on a Roscoe. Would the affidavit have been sufficient if it had linked the phone and the SD cards as being compatible? Right. I do think that would have helped. That's not alleged in the application. They don't say these SD cards are. You're saying that's the kind of missing link that we didn't have. Right. There's that. There's the fact that it's not necessarily illegal to drive around cash. I mean, I know a guy who, when he walks the city, he has $100 in cash on him. He sticks $80 of it in his sock. He puts the other $20 back in his wallet. And it's for the specific purpose that if he gets mugged, all the robber gets away with is $20 and not the full $100. So sometimes people hide cash so they don't want to lose it. But so I'm going back to the JA because I said something, you questioned it, and I want to come back to it. He talks about the GPS phone being open on page 41 of the JA. This is the affidavit where he walks through this information. And so if, and I'll let you just accept hypothetically, there's probable cause to believe that he's engaged in drug trafficking by moving drug money. And that's sort of hypothetical to you. I understand you only said that. Then why is it where he's going with the drug money evidence that you have probable cause for? Accepting my hypothetical that there was probable cause to believe that he was engaged in drug trafficking once they found the $111,000 hidden behind the dashboard that the drug dog alerted on. So I mean that, you know, admittedly my argument on the phone is weaker than my argument as to the SD cards regarding the allegations in the affidavit or the application. But even if the court says, no, we think there's enough in this application to support a search of the cell phone, you still have the problem with the micro SD cards. All right, so can you talk to me about Judge Traxler had an opinion maybe a year or two ago called Cobb. I'm not sure if you're familiar with it. This is one where the guy gets arrested for murder and from the jail he calls his father or somebody and says, hey, like, get that laptop out of my room. You know, you got to wipe it. And, you know, Judge Traxler says, yeah, there's obviously probable cause to believe that whatever's on that, that the defendant is saying, get the phone, get the computer. It's a computer, not an SD card, but a computer because it's got, you know, some some stuff using a slightly different word on it. It need to wipe it, but not saying what or connecting it to anything. And Judge Traxler found that was probable cause to believe that it was evidence of the murder. Turned out not to be. It turned out to be the same kind of information we've got here. But what how how is this case different? He's chewing him up. Right. He he put like. In his mouth and chewed him up. It's suspicious, but the officer never discusses it in the application. He just starts off saying, I want to search those SD cards. He puts a lot of other stuff in the application, like the hidden compartment. Right. He made a spontaneous utterance that the money wasn't his. That he was paid a sum of money to transport the money. But he wouldn't say how much money he was paid. It went on and then the drugs in a hidden compartment found in the car. There was a hidden compartment in the car. Well, that's what they haul money and drugs in, hidden compartment. He talks about his experience, hidden compartment in the car. And that's where they found money in separate plastic grocery bags. I mean, they spill out a lot of stuff in here. Yes, I understand that. And he says he represents to the magistrate. That's enough on my and based on my experience to be probable cause. To search the car. Then it was up to the magistrate judge to decide whether there was probable cause. For the warrant. Correct. And the magistrate said yes. Right. And you're saying that's a violation of the Fourth Amendment. With respect to the micro SD cards, for sure. And with respect to the cell phone. But he says on page 43 of the J.A. And I'll let you sit down. I know we're over. But he says he like put them in his mouth and tried to chew them up. I mean, what I'm trying to ask is why is that different from Cobb? When you say, hey, wipe my computer. Right. And then, like, shoving them in your mouth and chewing them up. Admittedly, there's a lot of case law out there that says attempts to secrete something might be somebody trying to hide evidence of a crime. And magistrate can draw a reasonable inference to that effect. But in this case, you know, it could be anything. It could be something else that he doesn't want the law enforcement to know about necessarily. What about the fact he had been storing these cards in his shoe? People don't usually. I mean, that's kind of unusual behavior, isn't it? So you start with someone storing these memory cards in his shoe and then he puts a couple of them in his mouth. I mean, that's just destruction of evidence. It seems to me. What other inference could the officer possibly have drawn from the fact that he was trying to chew and swallow these cards? I mean, if you go back to my example about the guy who hides the money on his person so he doesn't lose it in a robbery. I mean, do you make the same leap there and say, oh, he's hiding this money. It must be money from ill-gotten gains or something like that. There could be a number of reasons. Well, he was hiding his money, but he wasn't chewing his money. You know, you see what I'm saying? Yes, Your Honor. To me, it suggests a classic destruction of evidence. And I don't know what other fact you could reasonably infer from this. But he never closes the loop and says, you know, I believe that based on what he did, I need to go search. We have to be reasonable. Look at this. Hypothetically, if this came up here without a warrant, I'm not as able as the other judges in pulling cases out of the air, but I bet you we've sustained weaker situations on warrantless searches of automobiles. Automobiles are a special situation for searching for contraband and evidence of crimes. I understand. And we've had a lot of them where we didn't go get a warrant. And we've criticized them. We might have sustained it, but said it would be good and helpful if somebody would run us by a judge somewhere, which is what they did. I mean, the process here is commendable. They went to the judge. I understand, Your Honor. Anyway, you're doing a good job. Thank you, Your Honor. The fact that you do, we appointed you, I think. Right. I'm going to go ahead and cede the podium. You saved some time. Thank you. Thank you. Before I begin, may I remove my mask? Yes. Oh, yes. Absolutely. I should have said something about that earlier. I'm sorry. Davis. Yes. Good to be here. Nice to be here. Thank you, Your Honor. I'm just going to remove this. There we go. May it please the court, Natasha Harnwell Davis for the United States. This court should affirm for any of three reasons. As this court has principally been addressing the probable cause, I will certainly focus my time on that, which is to say that the magistrate judge had a substantial basis to find that the affidavit showed probable cause to search both the phone and the SD card. But there are two other grounds for affirmance, should the court reach them. The first, of course, is the good faith exception. And the second is that images of child sex abuse that were found on Mr. Orozco's phone or the SD cards independently support the conviction, which Mr. Orozco conceded at page 32 of his brief. Turning to the probable cause, which is where this court is focusing its attention, a reviewing court gives great deference to a magistrate judge's determination that the totality of the circumstances described in the four corners of the affidavit establish probable cause to search the SD cards and the smartphone that Mr. Orozco had on his person. Can you just help me understand from your perspective, like, the role that boilerplate plays? You know, we use this term boilerplate, and I think it's generally not used as a positive. I think your opposing counsel thinks it is a positive, at least would have been a positive here. You know, he goes through and he says, like, you know, the guy tried to eat the SD cards, right? But he then doesn't, like, as your colleague would say, close the loop by saying, and one trying to eat digital media must be trying to hide something, right? I mean, that second step, which seems, you know, would have been, I think, fairly easy to say and might well be obvious. How should we think about the need for an officer to, like, as your colleague says, close the loop, I think was the language he used, to say, if you're trying to eat digital media, you might be trying to hide something. That last piece is missing-ish here. How do we think about that, and how do we think about where to draw that line? Absolutely, Your Honor. I believe the common sense. So there are plenty of cases that say a magistrate judge can make a common sense inference. And I believe in this circumstance that trying to eat the SD cards provides a reasonable common sense inference that Mr. Orozco was attempting to conceal evidence from the officers. I think- And how far does that go, right? So now take that away from the SD card and to the phone and hypothesize for a minute that we don't have this GPS issue, right? Assume they didn't see anything in the GPS. We often see language about, you know, an officer's training and experience that drug traffickers keep information about their drug trafficking on their phone. But, you know, the real answer is that that's just a more specific example. The basic idea that you see in Supreme Court cases on down that we keep enormous details about our lives on our phones. And that's an idea that is not specific to drug traffickers at all, right? If you want to know something about what you're engaged in, I suspect if I look through your phone, I'd learn a lot about your work. And if your work was drug trafficking, I'd learn about drug trafficking. If your work was being an AUSA, I'd learn about being an AUSA, right? So what about that? I mean, is that a natural inference that we can that a magistrate judge can draw or we can credit a magistrate judge drawing? It's maybe not quite as easy as if you're eating digital evidence, you must be hiding something. But is that the same kind of common sense inference that we permit magistrate judges to make? In general, yes. And I would say particularly in the drug trafficking context, because in drug trafficking, you are coordinating with other people. So you have, returning briefly to this case, you do have the phone displaying the GPS. But you also have the presumption based on Mr. Orozco's statements that someone else was paying him to drive this money that was hidden in the car and the car belonged to someone else. So you could also reasonably infer that the phone would give the officers information about who he was coordinating with. Why? Why would there be information on the phone about who was working with him in this operation? Generally because people use cell phones to coordinate, so someone might text. Well, but doesn't that cut both ways? I mean, if these are very sophisticated drug dealers, maybe they don't use phones because they know phones trap you time and again. You always get in trouble if you use your phone because you can never erase it completely. So let's say they're very sophisticated. And so why would there be any basis for thinking that these people might not have a system that doesn't involve cell phones? Because I believe there's no evidence of that in this case, Your Honor. Admittedly, there are some drug trafficking. But I know, but I'm saying it seems to me other than the GPS issue, because that is a factual circumstance that points to the cell phone's involvement in this man's conduct on the night in question. Okay. But aside from that, I don't see where you have anything else. You say that his phone number was associated with an open DEA case, but we don't know whether he was a suspect, whether he was an informant, whether he was a neighbor, somebody entirely innocent. We don't know anything about that open DEA case, do we? No, Your Honor, we don't, but it does go to the totality of the circumstances. Well, what does that suggest, that he was a neighbor of this person? In other words, it seems to me that what you're asking us to do in evaluating probable cause is to take the most suspicious take on the facts as opposed to a balanced take on the facts. And I agree with you that the cell phone GPS issue is a direct link, that his evasive behavior regarding his use of the GPS on the cell phone is a factual circumstance that cuts in the government's favor. But it seems to me that the rest of the ties to the cell phone could cut either way, and you're just arguing the most suspicious take on it. Could you comment on that? Well, yes, Your Honor. I mean, certainly they could cut both ways, but the question is, did the magistrate judge have a substantial basis to believe that there would be a fair probability of finding evidence of drug trafficking on the phone? And the government, in an affidavit, does generally present the most suspicious evidence that it can provide because it is looking to obtain further evidence. So it's asking a magistrate judge to make kind of the most suspicious inference, even when it is legal conduct. Can you walk me? I want to make sure I understand this because I think Judge Keenan raises a good point, right? So just walk me through the links that you're trying to make. I take it you're saying at step one that we know from this guy's own words that he was paid to drive somebody else's car with drug money in it. I guess he didn't say the last part, but we have that inference that's pretty clear. And then the second step in that process is that everyone today uses cell phones to communicate and coordinate. And the fact that he's got two of them suggests that he, too, uses cell phones to communicate and coordinate. And so you would then say, therefore, that is, you know, at least for probable cause, like doesn't get you beyond reasonable doubt, but probable cause that the phone would contain evidence of that coordination or communication. But then I think Judge Keenan raises the good point is, well, but maybe they're like quite sophisticated. Right. And so that they're they're not the type of drug dealers who are sloppy enough to do that. And I'm what I'm not sure you're saying at that on that on that step. There are two possible, maybe more than two. But let me at least give you two. I want to see which one you you are arguing. One is that it's just a fair probability. And so, yes, they might be a sophisticated drug dealer, but they might not be. And so just like positing a possible innocent explanation or in this case, not an innocent explanation, but a reason why the phone wouldn't have it is not enough. So that's option one or is option two sort of more case specific. Right. Which says, you know, people who have someone who's driving a car without a license and are who are so sloppy and putting, you know, cash behind the dashboard that you can tell the dashboard has been moved. They're not sophisticated. Are you are you which of those is the point you're making? I think it's the first, Your Honor. But of course, the second supports our position as well. And so why why is the first help me understand why the first works without a statement from an agent providing us some background on it? Right. Because it is true that we we all naturally know that all of us use our cell phones to communicate and coordinate. But we also sort of intuitively think that, you know, drug dealers are not necessarily always like us. And so how does the magistrate judge make that common sense inference as opposed to like a training and experience inference? I get it if there's a training and experience inference and you've got an expert that's doing it. But the common sense inference there help me understand why that's a common sense inference and not like sort of expert kind of testimony issue. Because, again, going back to the crime issue here, drug trafficking, generally people in order to traffic drugs have to coordinate with others and they generally do that through a cell phone. So, OK, so that last part, what is that? Why? What's the evidence of that other than the broad point that all people generally communicate through cell phones? How do you then connect that down to and drug traffickers, too? I mean, I think I would say it's a common sense inference that they're not that different from us is another way of saying your honor. Yes. I do want to address your honor's point about Cobb, which I think is directly on point in this case. As you may recall, Cobb is a case where a suspect directed his father to, quote, in order to remove data from it. And this court determined that that supported probable cause to seize and then search that laptop for evidence of a homicide investigation. I think, of course, the circumstances of the traffic stop here support the magistrate judge's determination of probable cause. You have the large quantity of cash that was found hidden in the car. The canine alert, Mr. Orozco's profound nervousness in the form of uncontrollable shaking, sweating, his closing out of the app when the officer asked him his destination, the DEA associated phone number. And of course, his attempt to eat the SD cards is highly suspicious. It doesn't sound like it, but just in case this court thinks that it is a close question as to probable cause, the good faith exception would apply. That's because the officers did obtain a warrant and relied objectively and reasonably on that warrant. The goal of suppression would be generally to deter officer misconduct. And that is not something that Mr. Orozco has alleged here. Of course, the court can consider uncontroverted facts that were inadvertently omitted from an affidavit. So in this case, I believe Agent Clutter was aware that the SD cards were compatible with the phone. So that would be available to this court in the good faith context. And the final point that I'll make is that the cell phone and the SD cards all contain images of child sex abuse. I have created a chart to show that. I think we got that. All right. So just briefly wrapping up that point, each of those devices would be grounds to affirm in this case. So unless the court has any further questions, I would urge this court to affirm. Okay. Thank you, Your Honors. We appreciate it. Mr. Granthamel? Regarding the issue about the good faith exception, I would just say that reasoning that good faith exception exists here because the magistrate went ahead and issued the warrant is circular reasoning. It's like saying the word of the Bible is true because the Bible itself says it's true. So I would ask the court not to rely on that. In terms of, Judge Richland, you said something. Why isn't his trying to chew up the SD cards evidence that he's trying to hide something? My argument is it shouldn't say hide something. It should say hide evidence of a crime. That's where you have to take that extra step. Lots of people try to hide things, but they're not necessarily committing crimes. In terms of the harmless error, even if the court says we think there was enough in this application to search the cell phone, but not enough necessarily to search the SD cards, Orozco still deserves a new trial because the jury was asked to determine if the electronic media had images of prepubescent minors, i.e., minors less than 12, and there's no distinction in the record on what those images on the cell phone were, except to say that they were also contained on the micro SD cards. But the jury didn't go through and say this card had prepubescent minors, this card didn't, the cell phone had them, or whatever. And if there's a partial suppression here, the jury would still ask to comment on it, and it should go back to the jury to comment on it if the court is of the opinion that there should have been partial suppression but not full suppression. And in terms of substantial basis versus fair probability, I guess the issue in this case is at what point do you draw the bright line? At what point do you say that's a reasonable inference, and then you get to a point where you say now you're just speculating, or you're just asking, you're just drawing conclusions and asking the magistrate to rubber stamp them. And I think this is a good case involving that. Admittedly, it could go both ways, but in the overall, the big picture, the guy was arrested on a misdemeanor. He was transporting cash, paid to be driving cash. Why don't, can you just comment for a minute on the discussion I was having with your colleague? I mean, I think it's Carpenter, but there are a number of cases, both Supreme Court and otherwise, that talk about the ubiquitous role that cell phones now play in our lives. This is not a fact that we need an expert to tell us. If I wanted to know about you and I had access to your phone, I would learn a lot about you. All good, I'm sure. Why isn't that just the natural inference that we draw about people in today's world? See Carpenter, right? As Carpenter recognizes, they are our lives now. And so if I have probable cause to believe that you're engaged in drug trafficking and I've got some reason to connect that phone to you, why isn't that enough on its own, given the sort of inference that Carpenter permits to be drawn? At least to say we would permit a magistrate judge to do that. Maybe the magistrate judge isn't required to make that inference. But if the magistrate judge makes that inference, standing alone, take the GPS data away, why is that not enough, given what Carpenter teaches us about, like the role that cell phones play in our lives? Because it erodes the right to privacy in general, where you say, if I suspect somebody of committing a crime, I've got reason to search anything and everything they use in their daily lives. But you agree, I think you agree, that if the agent had said, you know, paragraph 17, right, in my training and experience, right, laid out some sort of information, you know, drug traffickers that operate in this way or couriers that operate this way, you know, contain contact information of the people that they're trafficking drugs for, right? If he had closed the loop, as you indicated, that would suffice. And what I'm saying is Carpenter teaches us that, like, that that's that's not a law enforcement issue. Like, that's just true in life. And, you know, if the magistrate judge said, this link isn't closed here in the affidavit, but I've read the Supreme Court decision in Carpenter, and I think that same inference in Carpenter, like, I can understand it, and I can apply it in this context. Why is Carpenter not, like, basically the inference that we're talking about? I think there comes a point where you're just you got to say, OK, you can't go too far in these reasonable inferences. You know, I cited the case. But you don't think Carpenter went too far, did you? No, I'm not saying that, Your Honor. But I cited a case in my brief, and it wasn't an appellate decision. I think it was a district court. You can go as far as it's reasonable. Right. That's the reason we say reasonable inference. Yes, but that case I cited in my brief was something to the effect of, you know, a guy who's arrested for a misdemeanor, you know, it doesn't seem reasonable that you should be able to search anything in his cell phone based on being arrested for a misdemeanor. And so at what point, if the court wants to draw a rule of law or a bright line that says, you know, if you're suspected of being a drug trafficker, we're going to allow the police to search your cell phone. Because he's a drug runner, based on the affidavit. He's a drug runner. He's a courier. He's a mule. That was his part in the whole thing, at least, at the minimum. Well, if the court wants to draw a rule that says, yeah, if you're arrested on these facts, a magistrate has the right to issue a warrant. All you've got to do is look at the affidavit, which the magistrate did. And again, he didn't say, like, for example, on the SD cards, he says, yeah, he put the SD cards in his mouth, started chewing. But he doesn't go on to say, and in my experience, when somebody's arrested, brought down to the police station, and they do something like that, they're not trying to just hide something. They're trying to hide evidence of a crime. That's what I mean when I say closing the loop in the affidavit. So I ask you to reverse the district court's decision in this suppression case and award Mr. Orozco a new trial. Thank you. Thank you very much, sir. And I know you're court-appointed, and we appreciate your work, helping us and assisting the system. Thank you, Your Honor. Thank you very much.
judges: Robert B. King, Julius N. Richardson, Barbara Milano Keenan